**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 53028**

| | |
|---|---|
| In the Matter of: John Doe II, A Child Under Eighteen (18) Years of Age. | ) ) |
| ---------------------------------------------------- | ) |
| JANE DOE and JOHN DOE I, | ) |
| | ) |
| Petitioners-Respondents, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN DOE (2025-23), | ) |
| | ) |
| Respondent-Appellant. | ) |

Filed: November 7, 2025

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY

---

Appeal from the Magistrate Division of the District Court of the Second Judicial District, State of Idaho, Idaho County. Hon. Jeff P. Payne, Magistrate.

Judgment of the magistrate court terminating parental rights, <u>affirmed</u>.

Dickison Law Firm; Gregory C. Dickison, Moscow, for appellant.

Summer A. Emmert, Cottonwood, for respondents.

---

GRATTON, Chief Judge

John Doe (2025-23) appeals from the magistrate court's judgment terminating his parental rights to John Doe II (Child). We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2017, Mother and Doe had a sexual relationship which resulted in Child being born. While in jail, Mother found out that she was pregnant; Mother let Doe know he could be the father. Doe was not listed as Child's father on Child's birth certificate. Doe was incarcerated in 2018 when Child was born and was not released from prison until April 2021.

When Doe was released from prison, Child was three years old; Doe expressed an interest in being a part of Child's life. Doe arranged and paid for an at-home paternity test; the test results showed Doe is Child's father. As part of Mother and Doe's agreement for Doe to be in Child's life, Doe could not tell Child he was Child's father. Doe had about five or six contacts with Mother,

1

Mother's husband, and Child. There were also four or five unplanned visits in the community. Doe's last contact with Child was around February 2022.

In April 2022, Doe notified Mother that he was going to Salt Lake City for work. Doe wanted to see Child before he left. Mother refused to allow contact between Child and Doe because she believed Doe relapsed. Doe denied relapsing but testified at trial he had relapsed once. In approximately May 2022, Doe told Mother he intended to initiate a court proceeding due to Mother's refusal to allow Doe to see Child. Doe never initiated a court proceeding. Upon Doe's return from Salt Lake City, Doe did not have any in-person contact with Child.

In March 2023, Doe again was incarcerated. While in prison, Doe made Child a blanket, which Doe's mother delivered to Child in October 2023. When Doe's mother delivered the blanket to Child, Doe spoke briefly to Child in an unplanned telephone call. Beyond this contact, Doe has had no contact with Child.

Doe is currently incarcerated. Child has been living with Mother and Mother's husband since Child was one month old. Mother filed a petition for termination of Doe's parental rights and adoption of Child by Mother's husband. Doe filed a petition for paternity the following month. The magistrate court found that Doe had abandoned Child. Idaho Code § 16-2005(1)(a). The magistrate court also determined that termination is in Child's best interests. The magistrate court entered judgment terminating Doe's parental rights to Child. Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*,

143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *In re Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe argues the magistrate court erred by finding clear and convincing evidence demonstrating grounds for termination based on abandonment and in finding that termination of Doe's parental rights is in the best interests of Child. Specifically, Doe asserts the magistrate court erred by ignoring evidence of Mother's lack of effort to inform Doe of Child and Mother's refusal to allow contact between Doe and Child. Doe argues that the magistrate court erred in finding that the failure by Doe to maintain a normal parent-child relationship with Child was willful and without just cause.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117. Once a

statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991).

In this case, the magistrate court terminated Doe's parental rights on the ground of abandonment, I.C. § 16-2005(1)(a). A child is abandoned when "the parent has willfully failed to maintain a normal parental relationship, including but not limited to reasonable support or regular personal contact." I.C. § 16-2002(5). The word "or" is a disjunctive particle used to express an alternative and, thus, the willful failure to maintain a normal parental relationship can be based upon either the failure to pay reasonable support, or the failure to have regular personal contact, or some other failure. *Doe I v. Doe II (2009-02)*, 148 Idaho 713, 715, 228 P.3d 980, 982 (2010).

When a parent fails to maintain a normal parental relationship without just cause for a period of one year, prima facie evidence of abandonment exists. I.C. § 16-2002(5). There is no universal standard for what constitutes a normal parental relationship, and whether such a relationship exists depends on the facts and circumstances of each case. *Doe v. Doe*, 150 Idaho 46, 50, 244 P.3d 190, 194 (2010). The petitioner bears the burden of persuasion to demonstrate that the parent lacks a normal parental relationship with the child and that there is no just cause for the failure to maintain such a relationship. *Id.* If the petitioner is able to meet this burden, the parent then has the burden of production to present evidence of just cause. *Id.* If the magistrate court finds that just cause has not been established, the petitioning party has met its burden of persuasion. *Id.*

The key inquiry regarding "willfulness" is whether a parent is capable of maintaining a normal parental relationship with the child. *Doe v. Doe (2013-14)*, 155 Idaho 505, 508, 314 P.3d 187, 190 (2013). When a parent does not provide reasonable support without just cause, that by itself, is sufficient to establish abandonment. *Doe I v. Doe II*, 161 Idaho 532, 536, 387 P.3d 785, 789 (2016). For this reason, a trial court will inquire into whether a parent is capable of paying support or providing reasonable financial support based on the parent's circumstances. *In the Matter of Doe II*, 165 Idaho 199, 203, 443 P.3d 213, 217 (2019). As the Idaho Supreme Court has also stated, "[f]or one to willfully fail to do something, he or she must have the ability to do it." *Doe I (2009-02)*, 148 Idaho at 716, 228 P.3d at 993. If a parent is *legally* prohibited from seeing and contacting their child, then they do not have the ability to maintain a normal parent-child relationship and the abandonment cannot be willful. *Doe (2013-14)*, 155 Idaho at 508, 314 P.3d

4

at 190; *Doe I (2009-02)*, 148 Idaho at 718, 228 P.3d at 985. A parent has some degree of responsibility to acquire visitation through the court system if the child's custodian is not allowing contact. *Doe (2013-14)*, 155 Idaho at 509, 314 P.3d at 191. If the parent must secure visitation through the courts, then the failure to pursue such avenue indicates a willful failure to maintain a normal parental relationship. *Id.* at 508-10, 314 P.3d at 190-92.

The magistrate court found, by clear and convincing evidence, that Mother established Doe abandoned Child based on Doe's willfully failing to maintain a normal parent-child relationship, without just cause, by failing to provide financial support, and by failing to have contact with Child over several years of Child's life. Doe does not claim to have even attempted to provide support for Child during that timeframe, or reasons for not providing financial support. At trial, Doe received questioning regarding his failure to provide financial support on behalf of Child.

| MOTHER'S COUNSEL: | You never paid any support for [Child], correct? |
| DOE: | No. I was told that they didn't want it. |
| MOTHER'S COUNSEL: | Did you attempt to pay anyway? |
| DOE: | No, I did not. |

Doe simply chose to not provide or offer to provide financial support for Child at any time during Child's life, both while incarcerated and when released and employed. Mother testified that the only discussion about financial support was simply in reference to Doe obtaining a paternity test and seeking to avoid paying court-ordered financial support. The magistrate court ultimately concluded in its findings of facts, "[Doe] has not provided financial support for [Child] and has failed to do what he can to provide financial support for [Child]." Doe does not contest the magistrate court's findings or conclusions based on failure to provide financial support. As noted above, the willful failure to maintain a normal parental relationship can be based upon either the failure to pay reasonable support, *or* the failure to have regular personal contact, or some other failure. *Doe I*, 148 Idaho at 715, 228 P.3d at 982. The magistrate court's determination that Doe failed to provide reasonable support at any point in Child's life is supported by clear and convincing evidence in the record and, alone, is sufficient to uphold the magistrate court's finding of abandonment.

The magistrate court also found that Doe failed to maintain a normal parental relationship with Child. Doe has not had consistent personal contact with Child. Since Doe has been

5

incarcerated, Doe has had almost no contact with Child.[1]  Even when Doe was out of jail in 2021, Doe had inconsistent and sporadic contact with Child.  Doe claims that he could not have known what Mother's or Child's circumstances were when he first went to prison in 2018 because Mother made no contact with Doe until after Child's birth.  In addition, Doe claims the notice he did receive about Child was simply that Doe may be Child's father while Mother was still incarcerated.  Doe does not explain why he did not reach out to Mother while he was incarcerated between 2018 and 2021.  Doe has had no in-person contact with Child, and as previously mentioned, only one unplanned phone conversation when Doe's mother delivered the blanket to Child.  Subsequently, Doe has not sent letters or cards or had any other communication with Child.

Doe claims his lack of contact was due to Mother cutting him off from seeing Child based on concerns about him relapsing.  However, that occurred in 2022, and Doe told Mother he would be initiating a court proceeding to see Child but never did.  Doe was not incarcerated again until May 2023.  Doe claimed to Mother that he had not relapsed but acknowledged at trial he had relapsed on one occasion.  Doe never initiated any court proceedings until Mother sought to terminate Doe's parental rights.  Doe has not attempted *any* methods of communication or contact since his latest incarceration, beyond providing the blanket.  Even when Doe was out of jail, his contact with Child was neither regular nor consistent.  There is no testimony presented as to why Doe did not seek court assistance to establish his parental rights.  Further, there is no testimony from Doe explaining his lack of attempts of communication (cards or letters) with Child during his current incarceration period.  The magistrate court found that Doe's life circumstances are the product of his choosing and do not excuse his failure to maintain a normal relationship with Child.  Substantial and competent evidence in the record supports the magistrate court's finding by clear and convincing evidence that Doe abandoned Child by willfully failing to maintain a normal parental relationship without just cause.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship.  *In re Aragon*, 120 Idaho at 611, 818 P.2d at 315.  The best interests analysis is an expansive analysis with no set list of factors a court must consider.  *Matter of Doe*, 164 Idaho 511, 516, 432 P.3d 60, 65 (2018).  In *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015), the Court stated:

---

[1]     Only when Doe's mother was delivering a blanket to Child did Doe have a brief interaction with Child on the phone.  It was not coordinated by Mother.

[S]ome important considerations that apply here include: parent's history with substance abuse, whether the parent has provided financial support, the child's relationship with those currently caring for him or her and whether the child has improved under that care, the child's need for stability and certainty, and the parent's incarceration. *Idaho Dep't of Health and Welfare v. Doe*, 253 Idaho 797, 803, 275 P.3d 23, 29 (Ct. App. 2012); *In re Doe*, 157 Idaho at 772, 339 P.3d at 1176.

The magistrate court found:

> In this case, this court finds by clear and convincing evidence that termination of [Doe's] parental rights is in [Child's] best interest. [Doe] and [Child] have no parent/child relationship or bond and [Child] does not even know that [Doe] is his father; [Mother's] husband has been in [Child's] life since [Child] was one month old and has fulfilled the role as [Child's] father since that time.
>
> [Doe] has not had any significant role in [Child's] life and [Child] is almost eight years old and doesn't know [Doe] is his father.
>
> [Doe] has not provided any support for [Child] since [Child] was born.
>
> [Doe] has not made any meaningful or successful effort to improve his situation in life since [Child] was born so that he could provide for [Child's] needs and fulfill a parental role in [Child's] life.

Doe does not challenge the magistrate court's determination that termination is in Child's best interests. Therefore, we hold the magistrate court did not err by concluding that termination of Doe's parental rights due to abandonment is in Child's best interests.

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's finding that Doe abandoned Child, and that termination is in Child's best interests. Accordingly, the magistrate court's judgment terminating Doe's parental rights is affirmed.

Judge HUSKEY and Judge TRIBE **CONCUR**.